[Crim. No. 17255. Second Dist., Div. Five. Aug. 26, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
MARY HOUSTON, Defendant and Appellant.

## COUNSEL

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Robert W. Carney, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**STEPHENS, Acting P. J.**—Defendant was charged by information with violation of Health and Safety Code section 11501 (sale of narcotics), and was also charged with a previous conviction of violation of Health and Safety Code section 11500 (possession of narcotics). Defendant pled not guilty and admitted the prior conviction. After a jury trial, defendant was found guilty as charged. Her motions for a new trial and for reduction of the charge were denied, but her motion to withdraw the prior conviction was granted.[1] On September 6, 1962, criminal proceedings were adjourned and the sheriff was ordered to file a petition pursuant to Penal Code section 6451 in order that an examination and hearing could be had to determine whether defendant was addicted to the use of narcotics, or in imminent danger of becoming so addicted. Defendant was thereafter committed to the California Rehabilitation Center. On May 6, 1969, criminal proceedings resumed. Probation was denied and defendant was sentenced to the California Institution for Women for the term prescribed by law. Defendant appeals from the judgment.

So far as is relevant to this appeal, the facts are as follows: On May 18, 1962, Primo T. Orosco, a narcotics agent for the California Department of Justice, went to the Jefferson Hotel in Los Angeles, where he met a man named Barnett (a codefendant in defendant's trial) in the reception room of the hotel. Agent Orosco asked Barnett if he could buy two grams of

---

[1]The record is silent as to whether this was with the concurrence of the prosecutor, and we do not pass upon the propriety of this action.

heroin. Barnett walked up the stairs to the second floor, where he met defendant and had a conversation with her, while Orosco remained in the reception room. Defendant then came down the stairs, walked into the reception room, handed Orosco two small capsules of heroin, and asked him for money. According to Agent Orosco, the two capsules were not inside anything else. He asked defendant how much money she wanted, and she told him six dollars. He gave her a five dollar bill and a one dollar bill, and asked her what had happened to the grams. She told him she only had caps, no grams. After Agent Orosco gave defendant the money, she walked up the stairs, met Barnett, and handed him what appeared to be the same money the agent had given her. Orosco then left the hotel and returned shortly with three more agents of the State Narcotics Bureau and a sergeant of the Los Angeles Police Department. Defendant and Barnett came down the stairs and were placed under arrest.

Defendant testified that on the day in question she was walking down the stairs of the hotel to the first floor to get some cigarettes when Barnett called to her. He said, "Mary, would you pass this package to this man?" He handed her something wrapped in a piece of paper and said, "Wait a minute. Tell that man to send me the money he owes me." She took the package downstairs and gave it to Agent Orosco. The latter asked her, "How about the gram?" She said, "What gram?" When Orosco then said, "I want a gram," she answered, "I don't know nothing about no gram. You have to ask Bernard about that." "Bernard" was the name by which defendant knew Barnett. She told Orosco that she wanted six dollars. He gave her the money, and she went back up the stairs and handed it to Barnett. She stated she did not know that the object which Barnett had given her contained narcotics, and that she would never have passed it if she had.

On appeal, defendant first contends that it was error to permit one of the arresting officers to testify to statements allegedly made out of defendant's presence by codefendant Barnett after his arrest. According to the officer, Barnett stated: "Man, give me a break . . . [and] I'll set you up my connection, Mitchell, at 3:00 o'clock. I can score for 75 caps from him. By the way, man, I didn't even sell to you. Mary was the one who brought the stuff down and you paid her." Defendant contends that this testimony was admitted in violation of the rule of *People* v. *Aranda,* 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265].

In *Aranda,* the state Supreme Court held that it was improper in a joint trial to offer an extrajudicial statement of a defendant which implicated a codefendant. However, the court did not rest its decision upon constitutional grounds: "In the absence, however, of a holding by the United States

Supreme Court that the due process clause requires such change, the rules we now adopt are to be regarded, not as constitutionally compelled, but as judicially declared rules of practice to implement [Penal Code] section 1098." While the prosecution only offered the statement against "the defendant shown present," defendant relies upon the following language of *Aranda* (at p. 526): "The risk of prejudicing the nonconfessing defendant can no longer be justified by the need for introducing the confession against the one who made it. Accordingly, we have held that the erroneous admission into evidence of a confession implicating both defendants is not necessarily cured by an instruction that it is to be considered only against the declarant." Nevertheless, the court went on to state (at pp. 526-527): "The giving of such instructions, however, and the fact that the confession is only an accusation against the nondeclarant and thus lacks the shattering impact of a self-incriminatory statement by him [citations] preclude holding that the error of admitting the confession is always prejudicial to the nondeclarant."

Defendant argues that since *Bruton* v. *United States,* 391 U.S. 123 [20 L.Ed.2d 476, 88 S.Ct. 1620], the rule of *Aranda* is constitutionally compelled, and that the court's error in admitting codefendant Barnett's statement must be tested by the "harmless beyond a reasonable doubt" rule of *Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]. The California Supreme Court reached the same conclusion in *In re Hill,* 71 Cal.2d 997, 1007-1015 [80 Cal.Rptr. 537, 458 P.2d 449]: "Until such time as the Supreme Court affirmatively indicates that cross-examination of the confessing codefendant at trial is adequate under the confrontation clause, we feel compelled to hold that the admission of his confession is constitutional error of the type condemned by *Bruton.*" However, in *Bruton,* a codefendant's confession implicating Bruton was admitted although the codefendant did not take the stand. The court held that under these circumstances Bruton's constitutional right of confrontation was violated. In the recent case of *California* v. *Green* (1970) 399 U.S. 149 [26 L.Ed.2d 489, 90 S.Ct. 1930] the United States Supreme Court disapproved the California case of *People* v. *Johnson,* 68 Cal.2d 646 [68 Cal.Rptr. 599, 441 P.2d 111] which had held that section 1235 of the California Evidence Code permitting use of a witness' prior inconsistent statements to prove the truth of the matter asserted, was unconstitutional insofar as it permitted the use of prior statements which were not subject to cross-examination when originally made. The United States Supreme Court stated (at pp. 159-162 [26 L.Ed.2d at pp. 497-499]): "We cannot share the California Supreme Court's view that belated cross-examination can never serve as a constitutionally adequate substitute for cross-examination contemporaneous with the original statement . . . .

For where the declarant is not absent, but is present to testify and to submit to cross-examination, our cases, if anything, support the conclusion that the admission of his out-of-court statements does not create a confrontation problem." The court went on to suggest that it would be proper to use the statements of a defendant against a codefendant if the declarant were available for cross-examination: "Again, in *Bruton* v. *United States,* 391 U.S. 123 (1968), the court found a violation of confrontation rights in the admission of a codefendant's confession implicating Bruton, where the codefendant did not take the stand. The court again emphasized that the error arose because the declarant 'does not testify and cannot be tested by cross-examination,' 391 U.S., at 136, suggesting that no confrontation problem would have existed if Bruton had been able to cross-examine his codefendant." (P. 163 [26 L.Ed.2d at p. 500].)

■ In the instant case, Barnett took the stand and was subject to cross-examination. The *Aranda* error was therefore not of constitutional proportions and cannot be ground for reversal unless it is "reasonably probable that a result more favorable to [defendant] would have been reached had the *Aranda* rules been followed." (*People* v. *Lara,* 67 Cal.2d 365, 393 [62 Cal.Rptr. 586, 432 P.2d 202].) ■ While the error might not be able to withstand the *Chapman* test, we do not believe that, standing alone, a different result would have been reasonably probable in its absence. It was conceded by both sides that defendant handed the heroin to the agent. The crucial issue was her knowledge and her intent. While Barnett's remarks could possibly be construed as an accusation of criminal intent on the part of the defendant, when examined in the light of the other evidence of defendant's guilt, we feel they were relatively innocuous. Nevertheless, when this error is combined with the subsequent constitutional error (see discussion *infra*), we feel that reversal is required.

■ One of the arresting officers was permitted to testify as to statements defendant made while in custody at police headquarters. No showing was made that she had been advised of her rights, pursuant to *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758] and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. The officer testified that defendant said, "Man, you know, I'm not dealing down here. I just brought that stuff down. Barnett was the guy that had it. I brought it down for him and gave it to the Mexican fellow. You got the dealer there. I know his connection. And if you give me a break, I'll get him for you. He told me to collect $6 for it. And I took it up and gave it to Barnett. You know that because you saw me give it to him." ■ While the trial in this case occurred prior to the above two decisions, they are applicable to all cases in which the appeal has not become final as of June 22, 1964. (*People* v. *Rollins,* 65 Cal.2d 681, 691 [56 Cal.Rptr. 293, 423 P.2d 221].)

■ While defendant made her statements to the police at the time she was in custody without having been informed of her rights, the officer's testimony concerning those statements was first elicited by defense counsel during cross-examination. The prosecution subsequently elicited more extensive testimony concerning her remarks during the direct examination of another police officer. Since defendant's trial was held before the *Escobedo* and *Dorado* decisions, a failure on the part of defense counsel to object to the admission of her in-custody statements would not constitute a waiver of the right to so object. (*People* v. *Doherty,* 67 Cal.2d 9, 14 [59 Cal.Rptr. 857, 429 P.2d 177].) However, as defense counsel intentionally elicited this testimony, the problem is not quite so simple. Since the *Escobedo* and *Dorado* decisions had not been rendered at the time of trial, we find there was no "intentional relinquishment or abandonment of a known right or privilege" (*Johnson* v. *Zerbst,* 304 U.S. 458, 464 [82 L.Ed. 1461, 1466, 58 S.Ct. 1019].) ■ The courts should indulge every reasonable presumption against a waiver of a constitutional right. (*Aetna Ins. Co.* v. *Kennedy,* 301 U.S. 389, 393 [81 L.Ed. 1177, 1180, 57 S.Ct. 809].) ■ Defense counsel's tactical decision may have simply been that defendant's remarks would appear in a better light if elicited by the defense, rather than by the People. If he had been able to exclude the testimony concerning defendant's statements, counsel might well have adopted an entirely different trial strategy. (See *Smith* v. *Yeager,* 393 U.S. 122 [21 L.Ed.2d 246, 89 S.Ct. 277], where, during an application for a writ of habeas corpus, petitioner's counsel indicated to the court that he did not wish an evidentiary hearing. It was doubtful whether, under the law at that time, petitioner was entitled to an evidentiary hearing. Thereafter, the United States Supreme Court decided *Townsend* v. *Sain,* 372 U.S. 293 [9 L.Ed.2d 770, 83 S.Ct. 745] substantially increasing the availability of evidentiary hearings in habeas corpus proceedings. Petitioner again sought habeas corpus and requested an evidentiary hearing. The court stated (at 393 U.S. 125-126 [21 L.Ed.2d at pp. 249-250]): "We do not believe that petitioner should be placed in a worse position because his then counsel asserted that he had a right to an evidentiary hearing and then relinquished it. ■ Whatever counsel's reasons for this obscure gesture of noblesse oblige, we cannot now examine the state of his mind, or presume that he intentionally relinquished a known right or privilege, [Citation], when the right or privilege was of doubtful existence at the time of the supposed waiver.")

■ Since the instant case was tried before June 13, 1966, the case of *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602] prohibiting the use of improperly obtained statements, whether inculpatory or exculpatory, does not apply. (*Johnson* v. *New Jersey,* 384 U.S. 719 [16

L.Ed.2d 882, 86 S.Ct. 1772]; *People* v. *Rollins, supra,* 65 Cal.2d 681, 683.) Under the *Escobedo* and *Dorado* decisions, defendant's statements were only inadmissible if they were inculpatory in nature. While defendant's statements could possibly be interpreted as exculpatory, it appears that their dominant thrust was inculpatory. The issue in the case was whether she was an innocent go-between, or a conscious participant in the sale of narcotics. Her remarks suggested that she was quite at home in the world of illegal narcotics transactions, and was well aware that she was delivering heroin to Agent Orosco. The fact that the prosecutor questioned another police officer concerning defendant's remarks bears out the conclusion that those remarks were favorable to the prosecution's case.

The judgment is reversed.

Aiso, J., and Reppy, J., concurred.