[Crim. No. 5406. First Dist., Div. Two. May 19, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE H. MARTIN, Defendant and Appellant.

## COUNSEL

Frank E. Sieglitz, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Robert R. Granucci and John T. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TAYLOR, J.**—This case is before us for a second time. Our original decision was filed on December 21, 1966, and published (*People* v. *Martin,* 247 Cal.App.2d 416 [55 Cal.Rptr. 629]). On February 17, 1970, we granted appellant's propria persona motion to recall the remittitur, vacated the judgment, and reinstated the appeal to determine it in the light of *Bruton* v. *United States,* 391 U.S. 123 [20 L.Ed.2d 476, 88 S.Ct. 1620], and *Roberts* v. *Russell,* 392 U.S. 293 [20 L.Ed.2d 1100, 88 S.Ct. 1921]. Prior to the scheduled hearing, the matter was taken off calendar at the request of the People, recalendared this month, and both sides given time to file additional briefs. Although many additional points have now been raised, no valid reason has been advanced to bring us to a different conclusion, except as indicated below with respect to the reconsideration of the effect of the prior conviction on appellant's sentence.

In 1964, appellant, George H. Martin, and his codefendant, McKinley Lomack, were jointly charged by information with possession of heroin (Health & Saf. Code, § 11500) and possession of heroin for sale (Health & Saf. Code, § 11500.5). Appellant was also charged with a prior conviction for possession of marijuana, which he admitted. A joint jury trial resulted in verdicts of guilty on both counts. Appellant received concurrent sentences.

On this appeal from the judgment of conviction entered on the verdict, appellant argues that: 1) the court erred in permitting Sergeant Hilliard to testify as an expert; 2) the cross-examination of appellant as to his financial condition was improper and prejudicial; 3) the erroneous admission of Lomack's extrajudicial confession deprived appellant of his constitutional right of confrontation; 4) he should have been granted a separate trial; 5) he cannot be convicted of both possession and possession for sale; and 6) he is entitled to a reconsideration of the effect of his prior conviction in October 1954 for possession of marijuana.

Viewing the record most strongly in favor of the judgment, the following facts appear: About 11 a.m. on November 13, 1964, Sergeant Hilliard of the Narcotics Detail of the Oakland Police Department, Officers Alves and Schwedhelm, and Agent Woishnis of the State Bureau of Narcotics Enforcement, began a surveillance of appellant's residence in Oakland. Each of the law enforcement officers was in a separate vehicle. Their attention focused on a white Mustang parked in the area. About 11:15 a.m., a Buick drove up and the driver, one Edward Hamilton, entered appellant's house. Shortly thereafter, Hamilton and appellant left the house. Appellant entered the Mustang and Hamilton returned to his Buick. The Mustang departed, followed by the Buick. Both were followed by the vehicles containing the officers.

The Buick and Mustang stopped in the vicinity of San Pablo Avenue and Haskell Street where appellant parked the Mustang and entered the Buick. Hamilton then drove the Buick and double parked in the area of Hollis and Folger Streets. Appellant and Hamilton left the car and approached a Quonset hut on Folger Street. Appellant looked into the window of this building, then rejoined Hamilton. They returned to the Buick, drove around the area and again double parked near the Quonset hut. This time, Hamilton approached the building, reached into some grass or weeds near a window and ran back to the Buick. Thereafter, Hamilton drove the Buick back to San Pablo and Haskell and appellant re-entered the Mustang.

Appellant, followed by the officers, drove the Mustang to an area near the intersection of 61st and Lowell Streets and parked. Appellant then

emerged from the car, threw a shiny object into a bush and drove away. Immediately thereafter, Sergeant Hilliard and Agent Woishnis drove to the bush and noticed a shiny foil-wrapped package about 4 to 5 inches long and 2 inches around. They picked up the package, opened it and found a small brown bag containing seven toy balloons. They removed two of the balloons, and dusted the remaining five balloons, the bag and tin foil with fluorescent powder, reconstructed the package, and returned it to the base of the bush where they had originally found it.

Hilliard took the two balloons that had been removed from the package to police headquarters for a chemical test and concluded that their brown crystalline contents were a narcotic. Thereafter, Hilliard signed a complaint against appellant, filed it, and obtained an arrest warrant. Hilliard then returned to 61st and Lowell where Woishnis and the other officers were continuing their surveillance, Woishnis in a panel truck, and Officers Alves, Carreker and Schwedhelm in a rented house trailer overlooking the bush and the package. Hilliard gave the warrant to Woishnis.

About 7:40 p.m., appellant, driving the white Mustang and accompanied by Lomack, returned to the area. Appellant pointed to the bush. Lomack left the Mustang, walked over to the bush, reached into it, and walked back toward the Mustang. As Lomack was apprehended by Officer Alves, the foil object dropped from his hand. Simultaneously, Officer Schwedhelm entered the Mustang and apprehended appellant, served him with the warrant and ordered him out of the vehicle with his hands in view and his mouth open. As appellant got out of the car, Woishnis discovered a balloon on the ground near the car door. A search of appellant revealed another balloon in his jacket pocket. On subsequent examination, all of the balloons in the original foil package, as well as the two balloons found at the time of appellant's arrest, were found to contain heroin.

Appellant testified in his own behalf. About 10:30 a.m. on November 13, 1964, he received a telephone call from Ed Hamilton, who wanted to see him. Appellant declined, but a few minutes later, Hamilton arrived unannounced at appellant's home. After appellant refused to talk to him, Hamilton left. Then appellant drove his Mustang to San Pablo near Ashby to get some cigarettes. Hamilton pulled up behind him in a Buick. Hamilton indicated that he had some marijuana. Appellant then entered Hamilton's car only because Hamilton offered to show him some marijuana. They drove down Ashby until Hamilton stopped the car. They got out and looked for some marijuana that Hamilton said he had in a matchbook. They walked along the street, turned around and got back into Hamilton's Buick. Hamilton first drove past appellant's car, then stopped and looked

again. After saying "Must not be here," Hamilton drove appellant back to the Mustang. Appellant returned home before noon.

About 5:30 p.m., appellant was at Stubby's Pool Hall on Sacramento Street and met Lomack. Lomack asked for a ride and appellant agreed. About 7:30 p.m., appellant, who was still at the pool hall, received a telephone call from Hamilton. Hamilton said the "matchbox" he had been looking for was in a bush near the corner of 61st and Market. Appellant replied that he didn't have any money for marijuana. Hamilton told him to go to 61st and Market Streets and pick up a package of marijuana in a bush near a house trailer. Appellant and Lomack drove to the spot and were apprehended as Lomack stepped out to look into the bush. Appellant denied being at 61st and Lowell prior to 7:30 p.m. that evening. He admitted, however, that if there was a package in the bush, it would contain a small amount of marijuana and that he was willing to buy marijuana from Hamilton. Appellant also denied that anything was taken from his pocket after his arrest.

Lomack testified that he met appellant at the pool hall about 7:30 p.m. when appellant agreed to give him a ride to the San Francisco bus stop at 40th and San Pablo. On the way, appellant stopped by the bush and asked Lomack to pick up a package. Lomack did so and was apprehended as he picked up the silver package. Lomack denied calling appellant that day for the purpose of purchasing heroin, but indicated he had called appellant to talk about a hair piece. Lomack gave conflicting testimony as to whether he had been informed of his right to counsel and to remain silent before recording a statement for Sergeant Hilliard. Lomack admitted he had a conversation with Hilliard but denied that he told Hilliard that he called appellant in order to buy a balloon of heroin for $50 or that appellant had directed him to pick up the heroin from the bush.

After the court admonished the jury that any statement made by Lomack was receivable only against him and not appellant, the prosecution called Sergeant Hilliard as a rebuttal witness. Hilliard testified that Lomack, after having been advised of his rights, admitted that when he was arrested, he was in the process of buying a spoon of heroin from appellant. Lomack telephoned appellant from San Francisco to arrange the transaction. Appellant told him to take a bus to Sacramento and Ashby. When Lomack arrived at the destination, appellant picked him up and drove him to the area of 61st Street, parked opposite a house trailer, and pointed to a bush. Appellant said to Lomack: "Get out and pick up the package." Thereafter, Lomack indicated he wanted to talk to his attorney and Hilliard elicited no further information.

■ Appellant first contends that the trial court erred in permitting Sergeant Hilliard to testify that in his opinion the seven toy balloons originally found in the foil package represented an amount of heroin possessed for sale. The ultimate issue for the jury was whether appellant knowingly possessed the heroin for sale and Sergeant Hilliard was duly qualified as an officer experienced in the narcotics field to give his opinion that the amount found was held for that purpose (*People* v. *Aguilar*, 232 Cal.App.2d 173, 178 [42 Cal.Rptr. 666]). Such opinion can be based on the amount of heroin involved and the type of packaging used (*People* v. *King*, 60 Cal.2d 308, 310 [32 Cal.Rptr. 825, 384 P.2d 153]; *People* v. *Aguilar, supra*; *People* v. *Villanueva*, 220 Cal.App.2d 443 [33 Cal.Rptr. 811]). California has followed the modern tendency in rejecting the rule that expert opinion is inadmissible merely because it coincides with an ultimate issue of fact (*People* v. *Cole*, 47 Cal.2d 99 [301 P.2d 854, 56 A.L.R.2d 1435]; Evid. Code, § 805).

■ Appellant next contends that it was error to permit the prosecution to cross-examine him over his objection on his employment prior to and at the time of the commission of the offense. In responding to the question, appellant testified to only intermittent employment and then volunteered that he played pool, dice and cards for money. This, appellant claims, reflected unfavorably on his character which he had not put in issue (Witkin, Cal. Evidence (1958) § 128).

In his defense, appellant admitted that he had gone to a certain location with codefendant Lomack to pick up a package of marijuana but by his plea denied any intent to sell narcotics. Thus, appellant placed the motive for his conduct squarely in issue and for the determination of this issue, the jury had to rely primarily on circumstantial evidence. It has been held that evidence of defendant's financial situation at the time of the offense is admissible to show motive where circumstantial evidence is largely relied upon for conviction (*People* v. *Williams*, 193 Cal.App.2d 394, 399 [14 Cal.Rptr. 279]; *People* v. *Richards*, 74 Cal.App.2d 279 [168 P.2d 435]).

Here, appellant's employment record was pertinent as it related to his financial need to engage in the illegal sale. It was for the jury to determine whether his pecuniary situation tended to directly connect him with the commission of the crime or to disclose the motive for its commission (*People* v. *Bigelow*, 165 Cal.App.2d 407, 418 [332 P.2d 162]). As Justice Bray stated in *People* v. *Gorgol*, 122 Cal.App.2d 281 [265 P.2d 69], a robbery case: "While it is true that in our case defendant on direct examination gave no testimony as to his financial condition, it was proper cross-

examination to ask him concerning his intent and concerning any matters which would refute his claim that he had not asked the driver for money" (p. 304). The fact that the questions might disclose information derogatory to appellant's character would not affect its pertinency nor constitute a valid objection to its admission (*People* v. *Peete,* 28 Cal.2d 306 [169 P.2d 924]; *People* v. *Burns,* 109 Cal.App.2d 524 [241 P.2d 308, 242 P.2d 9]). We conclude that the questions here asked were within the range of proper cross-examination.

■ We turn next to appellant's contention concerning the admission of Lomack's extrajudicial statement to Hilliard. Appellant contends that under *Bruton,* the introduction of the statement was prejudicial as it deprived him of his constitutional right to confrontation.

After our decision on the prior appeal, the United States Supreme Court decided *Bruton* v. *United States, supra,* which held that it is a denial of the right to cross-examination, guaranteed to a defendant in a criminal case by the confrontation clause of the Sixth Amendment, to admit at a joint trial the extrajudicial confession of a codefendant which implicates the defendant, despite instructions to the jury to disregard the confession as evidence against the nonconfessing defendant. The court reasoned that: "Despite the concededly clear instructions to the jury to disregard [the codefendant's] inadmissible hearsay evidence inculpating petitioner, in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination. The effect is the same as if there had been no instruction at all" (p. 137 [20 L.Ed.2d p. 485]). *Bruton* is to be given retroactive operation (*Roberts* v. *Russell, supra,* p. 294 [20 L.Ed.2d p. 1102]).

Our state Supreme Court held that since *Bruton* dealt with the same area of the introduction of extrajudicial statements of a codefendant as *People* v. *Aranda,* 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265], and is cast in a constitutional mold (*In re Hill,* 71 Cal.2d 997 [80 Cal.Rptr. 537, 458 P.2d 449]; *In re Whitehorn,* 1 Cal.3d 504 [82 Cal.Rptr. 609, 462 P.2d 361]), the proper test of error is the "harmless beyond a reasonable doubt" standard of *Chapman* v. *California,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824]. However, in *California* v. *Green,* 399 U.S. 149, 159 [26 L.Ed.2d 489, 497, 90 S.Ct. 1930], the U.S. Supreme Court stated: "We cannot share the California Supreme Court's view that belated cross-examination can never serve as a constitutionally adequate substitute for cross-examination contemporaneous with the original statement." Subsequently, *People* v. *Houston,* 10 Cal.App.3d 894, at page 899 [89 Cal.Rptr. 351], held that, where the declarant is available for cross-

examination, an *Aranda* or *Bruton* error is not one of constitutional dimensions, and that the proper test is whether it is reasonably probable that a result more favorable to the defendant would have been reached in the absence of the error (*People* v. *Watson,* 46 Cal.2d 818, 834-838 [299 P.2d 243]).

In our opinion, the error here was not prejudicial either under the *Chapman* or the *Watson* standard. The evidence of appellant's guilt, exclusive of Lomack's extrajudicial statement, was overwhelming. Appellant's admissions as to his whereabouts and all of the elements of the offense except his intent to sell heroin, the officers' observations of his conduct prior thereto, and the chemical examination of the balloons, amply established the fact that appellant had been involved in the sale of heroin. The officers had been watching appellant since 11:15 that morning when he appeared with Hamilton and observed him throw a package out of the car at 61st and Lowell. Some of the balloons in the package were removed and analyzed, while the rest were dusted and replaced in the bush. That same evening, appellant returned to the bush with Lomack. Both were apprehended and had heroin in their possession. Under these circumstances, Lomack's statement to Sergeant Hilliard was merely corroborative of one of the minor details of the transaction.

Appellant's intent to sell was amply established by overwhelming circumstantial evidence. All of the other elements of the offense were established by the observation of the officers and appellant's own admissions. We conclude that there is no reasonable possibility that either the erroneous introduction of Lomack's statement or that additional instructions on the limited purpose of Hilliard's rebuttal testimony, might have materially affected the jury in arriving at its verdict against appellant (*Chapman* v. *California, supra; In re Lara,* 1 Cal.3d 486, 489-490 [82 Cal.Rptr. 628, 462 P.2d 380]).

Appellant, however, argues that since the statement in controversy was admitted against only Lomack, he did not have the opportunity to cross-examine Hilliard, and that since Lomack denied the implicatory parts of the statement, he was unable to cross-examine Lomack. The record indicates that appellant did not seek to cross-examine Lomack and failed to request the additional opportunity to cross-examine either Lomack or Hilliard after Hilliard's rebuttal testimony. In any event, as indicated above, in view of the overwhelming evidence against appellant, apart from Lomack's statement, including the fact that he was caught in the midst of the offense, it is not reasonably possible that a result more favorable

to appellant would have been reached if he had sought and been granted the opportunity to cross-examine Lomack and Hilliard (*Chapman* v. *California, supra*).

 Appellant next argues that pursuant to *People* v. *Charles,* 66 Cal.2d 330, 344 [57 Cal.Rptr. 745, 425 P.2d 545], which made the *Aranda* rule applicable to his re nstated appeal,[1] the trial court should have severed his trial from Lomack's after having ascertained the prosecution's intended use of Lomack's statement. *People* v. *Aranda, supra,* at pages 530 and 531, abrogated the prior rule approving joint trials under Penal Code section 1098, and requires the granting of a motion for severance unless either the incriminating portion of the codefendant's confession can be effectively deleted, or the prosecutor assures the court that the confession will not be used.

However, here, no motion for severance was made and the trial court was not compelled to grant a severance on its own motion (*People* v. *Diaz,* 276 Cal.App.2d 547, 549 [81 Cal.Rptr. 16]). The record indicates that defense counsel was aware of Lomack's statement and was not taken by surprise. A motion for discovery of the statement was made at the preliminary hearing and discovery ordered by the court.

In any event, as noted in *People* v. *Charles, supra,* at page 337, failure to adhere to the *Aranda* standard constitutes reversible error only if it is prejudicial under the *Watson* test, since the rules for *separate trials* are matters of state procedure (*People* v. *Terry,* 2 Cal.3d 362, 387 [85 Cal. Rptr. 409, 466 P.2d 961]). In *People* v. *Massie,* 66 Cal.2d 899, at pages 920-922 [59 Cal.Rptr. 733, 428 P.2d 869], the court indicated that the most appropriate test of whether there should be a reversal for failure to grant severance, as required by *Aranda,* is the consideration of other particular identifiable errors, the significant differences that would have occurred at a separate trial, and the amount of evidence of guilt presented at the joint trial. The court stated at pages 922-923: "We do not believe that we should reverse a conviction achieved at a joint trial in the absence of a reasonable probability that the defendant would have obtained a more favorable result at a separate trial. Although we recognize the importance

---

[1]As noted in our prior opinion, where appellant's *Aranda* argument was rejected, the rule then applied only to cases that had not reached trial by November 12, 1965, the date on which *People* v. *Aranda* was filed. As appellant was tried in July 1965, *Aranda* was not applicable to the original appeal. On April 4, 1967, our Supreme Court held in *People* v. *Charles, supra,* that the *Aranda* rules applied to all cases on direct review after the date of *Charles,* even though the trial occurred before. The reinstatement of the appeal in 1970, therefore, made available to appellant the *Aranda* contention now raised.

of the preservation of the procedural safeguard of a separate trial, the Legislature has decreed joint trials to be the rule and separate trials the exception. The question of the erroneous denial of a severance does not rise to jurisdictional magnitude, nor is the right to a separate trial so fundamental that its denial must occasion automatic reversal. We cannot say that in every case of an improper denial of a separate trial, a joint trial is necessarily so unfair as to amount to a miscarriage of justice. We must weigh the prejudicial impact of all of the significant effects that may reasonably be assumed to have stemmed from the erroneous denial of a separate trial."

As we have indicated above, the evidence against appellant, apart from Lomack's statement, was not closely balanced as in *Massie,* but was overwhelming. We conclude that it is not reasonably probable that appellant would have obtained a more favorable verdict at a separate trial. Therefore, the error appearing on the face of the record was not prejudicial.

■ Appellant next argues that he cannot be convicted of both possession of heroin (Health & Saf. Code, § 11500) and possession for sale (Health & Saf. Code, § 11500.5), as the former is a necessarily included offense (*People* v. *Bravo,* 237 Cal.App.2d 459, 461 [46 Cal.Rptr. 921]). This contention would be meritorious if there had only been one package of heroin—either in the bush or in the possession of appellant. However, the record indicates that the officers saw appellant place in the bush the package of heroin recovered from Lomack; a second balloon of heroin was found by the door of the car as appellant got out during the arrest; and a third balloon of heroin was found in appellant's pocket during the search of his person immediately after the arrest.

■ The applicable rules were recently summarized by our state Supreme Court in *People* v. *Bauer,* 1 Cal.3d 368, at page 376 [82 Cal. Rptr. 357, 461 P.2d 637], as follows: "The proscription against double punishment in section 654 is applicable where there is a course of conduct which violates more than one statute and comprises an indivisible transaction punishable under more than one statute within the meaning of section 654. The divisibility of a course of conduct depends upon the intent and objective of the actor, and if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one. (*In re Ward, supra,* 64 Cal.2d 672, 675-676 [51 Cal.Rptr. 272, 414 P.2d 400]; *People* v. *Quinn, supra,* 61 Cal.2d 551, 555-556 [39 Cal. Rptr. 393, 393 P.2d 705]; *People* v. *McFarland, supra,* 58 Cal.2d 748, 760 [26 Cal.Rptr. 473, 376 P.2d 449]; *Neal* v. *State of California, supra,* 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839]; *People* v. *Brown,*

*supra,* 49 Cal.2d 577, 591 [320 P.2d 5].)" Where the question is whether a transaction is divisible or indivisible, each case must be resolved on its own facts (*People* v. *Brown, supra,* p. 591). The tests used in resolving the problem are summarized in *In re Hayes,* 70 Cal.2d 604, 607 [75 Cal. Rptr. 790, 451 P.2d 430], as: 1) the necessarily included offense test, which we have already shown is not applicable here; 2) the intent and objective test; and 3) the criminal acts test enunciated in *Hayes* itself (driving knowing license was suspended, and driving while intoxicated).

■ The intent and objective test is not very useful in this case. However, utilizing the "criminal acts" test of *Hayes,* we think there were two separate acts in the instant case: the possession of the heroin placed in the bush for sale to Lomack, and the separate and distinct possession of the balloon of heroin that was found in appellant's pocket after his arrest. Appellant argues that he merely possessed a single large quantity of contraband, that was split up between the bush and his pocket, analogous to the one quantity sold in two separate deliveries in *In re Johnson,* 65 Cal.2d 393 [54 Cal.Rptr. 873, 420 P.2d 393]. We find more persuasive here the analogy of the cases involving two distinct types of contraband, such as *People* v. *Schroeder,* 264 Cal.App.2d 217, 228 [70 Cal.Rptr. 491], and *People* v. *Bell,* 258 Cal.App.2d 450 [65 Cal.Rptr. 730]. We conclude that under the circumstances, appellant was properly convicted of both possession of the heroin found in his pocket (Health & Saf. Code, § 11500) and possession of the heroin in the bush for sale to Lomack (Health & Saf. Code, § 11500.5). (Cf. *People* v. *Hartfield,* 11 Cal.App.3d 1073 [90 Cal.Rptr. 274].)

■ Finally, appellant urges and the People concede that under the recently announced rule of *People* v. *Tenorio,* 3 Cal.3d 89, 95 [89 Cal. Rptr. 249, 473 P.2d 993],[2] appellant is entitled to the exercise of the sentencing court's discretion as to the effect of the October 1954 conviction for possession of marijuana. *Tenorio* held unconstitutional Health and Safety Code section 11718 which prevented a trial court from exercising its discretion in deciding whether or not to dismiss a prior narcotic conviction in imposing sentence. Here, appellant admitted the prior which was automatically taken into account at the time of sentencing, and resulted in an augmented sentence. As a period of over 10 years elapsed between the two offenses, the denial of the exercise of discretion is particularly serious.

---

[2]Although habeas corpus is the apparently proper procedure for asserting the *Tenorio* issue (*In re Johnson,* 3 Cal.3d 404, 418-420 [90 Cal.Rptr. 569, 475 P.2d 841]), in the instant case where the appeal is pending, a separate proceeding would be wasteful and the People have no objection.

The sentencing court is directed to exercise its discretion with respect to the effect of the prior conviction, pursuant to *People* v. *Tenorio, supra,* and the judgment is affirmed in all other respects.

Shoemaker, P. J., and Kane, J., concurred.