[No. H031506. Sixth Dist. Mar. 16, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
MARIO MALDONADO, Defendant and Appellant.

## COUNSEL

Peter F. Goldscheider, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Catherine A. Rivlin and Ann P. Wathen, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

## McADAMS, J.—

### INTRODUCTION

A jury convicted defendant of possessing methamphetamine for sale, a felony, and being under the influence of methamphetamine, a misdemeanor. (Health & Saf. Code, §§ 11378, 11550, subd. (a).) Defendant admitted that he had three prior convictions for being under the influence of, or using, a controlled substance. The court placed defendant on probation for three years.

On appeal, defendant contends (1) the trial court had no jurisdiction to try him because the district attorney failed to file an information; (2) defense counsel rendered ineffective assistance of counsel for failing to object to

evidence that defendant was unemployed and on welfare, and eliciting further evidence of his financial straits; and (3) the prosecutor committed misconduct by arguing that defendant placed the jacket in which the methamphetamine was found into his jail property. We affirm.

## STATEMENT OF FACTS

On the evening of December 13, 2006, three San Jose police officers went to 642 North 11th Street in San Jose to execute an arrest warrant on Jolene Scoggins and conduct a parole search of the premises. Scoggins was not there but defendant and two other persons were in the house. Defendant was wearing "a dark blue mechanics coat" and was "fidgety."

Officers Barreto and O'Neil, both experts in recognizing when someone is exhibiting symptoms of being under the influence of a controlled substance, concluded that defendant was under the influence of a stimulant. O'Neil searched defendant's coat pocket and found a large baggie of suspected methamphetamine. It was later determined that the baggie indeed contained 19.92 grams of methamphetamine.

Officer O'Neil advised defendant of his *Miranda*[1] rights. Defendant indicated he understood them and spoke to the officer. Defendant told O'Neil that he had been at the residence for approximately 30 minutes before the police arrived. He said the jacket with the drugs in the pocket was not his; he had found the jacket in a junk pile in the backyard. Thinking it was a nice jacket, he put it on. He found the methamphetamine in the pocket and snorted a line of it. He admitted he was under the influence,[2] but said "he wasn't dealing." When O'Neil asked him if he had a job, defendant said, "No, not at this time."

The officers confirmed that the backyard contained a junk pile of debris and construction materials. However, the other items of clothing in the junk pile were wet, whereas defendant's jacket was dry.

Officers Barreto and O'Neil transported defendant to the jail. Defendant wore the jacket through the preprocessing procedure, which includes fingerprinting, photographing, and urine analysis. Defendant never stated during preprocessing that the jacket was not his. He wore the jacket for his booking

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602].

[2] The parties stipulated that "the defendant's blood was taken at the time of the arrest . . . and tested positive for methamphetamines and amphetamines."

photograph. The jacket was included with his personal effects at the county jail.

Officers O'Neil and Delorenzo testified as experts on possession for sale versus simple possession of controlled substances. Based on the large quantity of methamphetamine found in the pocket of the jacket, both officers believed that the methamphetamine was possessed for sale. Officer O'Neil expressed the opinion that the quantity in the baggie was worth about $500 on the street.

*Defense*

Halle Weingarten, a licensed forensic toxicologist, testified as an expert on the "symptoms of someone being under the influence of personal use of methamphetamine." Ms. Weingarten testified that she "d[id]n't think there's any such thing as an average user" of methamphetamine, because patterns of use varied from occasional or casual use to heavier or addicted use. She opined that the maximum amount of methamphetamine an addict may use without dying is five grams a day of the drug, assuming the addict has developed a high level of tolerance to the drug. She also opined that a "functional addict" might be able to hold down a job, whereas a heavy user or "hard core addict" might not be able to do so.

Defendant testified in his own behalf. Defendant admitted that he had used about "a gram or something" of methamphetamine a day for the previous eight years. He considered himself a "functional addict" who "worked all [his] life." Defendant found a jacket on a pile of clothing and debris in the backyard and put it on. When he put his hand in the pocket and found the baggie of methamphetamine, he thought he had "found gold right there." He "couldn't help [him]self and [he] indulged in it." At first he was excited because he had found something he really could not afford. But then he put the baggie of methamphetamine back in the pocket, thinking that if someone identified the jacket, he would return it for a reward, because he was "not a thief." Although "it was a big quantity," he "had no intentions of selling" it. If no one claimed the coat and its contents, he would have kept it and "would have probably preserved it as long as I can because I couldn't afford that [amount of methamphetamine]." Defendant had been out of work for almost a year due to a shoulder injury and had been receiving welfare until a month before his arrest.

## DISCUSSION

### I.  *Lack of Jurisdiction*

The record in this case shows that on January 16, 2007, a preliminary hearing was held, defendant was inferentially bound over for trial, the parties

stipulated that the complaint could be deemed an information, the previously filed complaint was refiled as a deemed information, defendant waived reading of the information, and he was arraigned on the information. Relying on *People v. Smith* (1986) 187 Cal.App.3d 1222 [232 Cal.Rptr. 619], defendant contends that this expedited procedure divested the superior court of the jurisdiction to try him because the district attorney did not file an information. Defendant acknowledges that the Court of Appeal in *People v. Cartwright* (1995) 39 Cal.App.4th 1123 [46 Cal.Rptr.2d 351] (*Cartwright*) approved this procedure. However, defendant argues that the "deeming" of the complaint to be an information violates article 1, section 14 of the California Constitution and Penal Code section 739, and that *Cartwright* is either distinguishable or wrongly decided. We reject defendant's contentions.

■ "An information is an accusatory pleading made after a preliminary hearing in which it is found that there is sufficient cause to believe the defendant is guilty of a public offense. ([*Cartwright, supra,*] 39 Cal.App.4th [at p.] 1132.) The principal purpose of the information is to notify the accused of the charges he or she is to meet at trial. (*People v. Adams* (1974) 43 Cal.App.3d 697, 705 [117 Cal.Rptr. 905].) In order to provide that notice, the Penal Code requires a defendant to be arraigned in the court in which the information is filed. (Pen. Code, § 976, subd. (a).) At arraignment, the court reads the information to the defendant and asks whether he or she pleads guilty or not guilty to the charges as set forth in it. (*Id.,* § 988.) Failure to file an information is an irregularity of sufficient importance that the parties cannot cure the irregularity. by their consent to the proceedings. (*People v. Smith*[, *supra,*] 187 Cal.App.3d [at pp.] 1224–1225.)" (*People v. Dominguez* (2008) 166 Cal.App.4th 858, 864–865 [83 Cal.Rptr.3d 284] (*Dominguez*).)

Prior to trial court unification,[3] "felony proceedings commenced in the municipal court with the filing of a complaint and the holding of a preliminary examination before the magistrate. (Pen. Code, §§ 806, 872.) If the

---

[3] The Legislative Counsel's Digest of Statutes 1998, chapter 931, filed with the Secretary of State on September 28, 1998, states in relevant part: "The California Constitution provides for the establishment of superior and municipal courts, as specified, in each county. SCA 4 of the 1995–96 Regular Session, as approved by the voters on June 2, 1998, provides for the abolition of municipal courts within a county, and for the establishment of a unified superior court for that county, upon a majority vote of superior court judges and a majority vote of municipal court judges within the county; provides for the qualification and election of the judges; and revises the number of jurors required in certain civil actions. [¶] This bill would make various statutory changes to implement and conform to the unification of trial courts pursuant to the constitutional amendment. The bill would also make changes to various provisions of the Code of Civil Procedure, Financial Code, Government Code, Penal Code, and Vehicle Code to conform to changes proposed by AB 310, AB 1094, AB 1211, AB 1590, AB 1754, AB 1858, AB 1927, AB 2070, AB 2134, AB 2551, SB 117, SB 752, SB 1452, SB 1558, SB 1608, SB 1638, SB 1768, SB 1850, and SB 2168, respectively, contingent upon their prior enactment." (Stats. 1998, ch. 931, p. 5102.)

magistrate concluded there was sufficient evidence to hold defendant to answer, the prosecution filed an information in the superior court within 15 days, charging defendant with the felony offense. (*Id.*, §§ 976, 1382, subd. (a)(1); *People v. Crayton* (2002) 28 Cal.4th 346, 360 [121 Cal.Rptr.2d 580, 48 P.3d 1136].) After court unification, 'the proceedings in the early stages of a felony prosecution that formerly were held in municipal court now are held in superior court, but the basic procedural steps—the filing of a complaint before a magistrate, the holding of a preliminary examination before a magistrate, and the filing of an information and arraignment on the information before a superior court judge—remain the same.' (*People v. Crayton, supra*, at pp. 359–360.)" (*Dominguez, supra*, 166 Cal.App.4th at p. 865.)

The *Smith* case on which defendant relies took place prior to court unification. There, a complaint had been filed in *municipal* court but at arraignment in *superior* court it was discovered that there was no accusatory pleading on file in *that* court. The matter proceeded as if the complaint was the information. (*People v. Smith, supra*, 187 Cal.App.3d at p. 1224.) The appellate court reversed, holding that without an information on file before it, the superior court had no jurisdiction to proceed. (*Id.* at p. 1225.)

The *Cartwright* case—like this case—took place after the unification of the trial courts. There, the magistrate, a superior court judge, deemed the complaint to be the information immediately following her determination that the defendant should be held to answer. On appeal, the defendant argued that his conviction should be reversed because no information had been filed. The appellate court distinguished *Smith*, pointing out that in *Smith* no accusatory pleading had ever been filed in the court in which the defendant was to be arraigned and the parties had attempted to cure that error after the fact. In contrast, in *Cartwright*, an information was filed in the court where the defendant was to be arraigned when the magistrate accepted as such the document then on file before her. (*Cartwright, supra*, 39 Cal.App.4th at p. 1132.)

■ This case is virtually indistinguishable from *Cartwright*. As noted above, it took place after the consolidation of the trial courts in Santa Clara County. At the conclusion of the preliminary hearing, and immediately upon the superior court judge's order, as magistrate, binding defendant over for trial, the parties stipulated that the court could treat the complaint already before it as the information. Defendant nevertheless maintains that this scenario violated article I, section 14 of the California Constitution,[4] and Penal

---

[4] Article I, section 14 of the California Constitution provides, in relevant part: "Felonies shall be prosecuted as provided by law, either by indictment or, after examination and commitment by a magistrate, by information."

Code section 739,[5] because "in the absence of an information *filed* by the District Attorney, there can be no jurisdiction." (Italics added.) "A filing of papers is accomplished by depositing with the proper officer at his office or at any place at which he is called upon to perform his duties, the paper which is to be filed." (*People v. Ramirez* (1931) 112 Cal.App. 507, 510 [297 P. 51].) The procedure employed here by the parties and the court expeditiously accomplished the "filing" of the information in the superior court. Instead of making the prosecutor go to his office, transform the document labeled "complaint," into an identical document labeled "information," return to the courthouse, and deposit the document with the superior court judge or clerk, the process used here permitted the prosecutor to accomplish all that by agreeing to have the existing piece of paper labeled a complaint treated as a piece of paper labeled an information. We see no violation of article I, section 14 of the California Constitution or Penal Code section 739. Consistent with the powers conferred upon him by the state constitution, the judge here, sitting as a magistrate, presided over defendant's preliminary hearing and held defendant to answer. (*Gray v. Municipal Court* (1983) 149 Cal.App.3d 373, 376 [196 Cal.Rptr. 808].) By stipulating to treat or "deem" the complaint to be the same as the information, the parties did not attempt to confer jurisdiction by stipulation. They stipulated to a fact—the existence of a document denominated an information—on which the judge, now sitting as a superior court, could properly act.

No error occurred.

## II.  *Ineffective Assistance of Counsel*

Defendant claims that his trial attorney rendered ineffective assistance of counsel when he (1) failed to object to Officer O'Neil's testimony that defendant said he was unemployed at the time of his arrest; (2) asked defendant about his unemployment and receipt of welfare; and (3) failed to object to the prosecutor's followup questions about defendant's welfare status.

"A defendant seeking relief on the basis of ineffective assistance of counsel must show both that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates, and

---

[5] Penal Code section 739 provides: "When a defendant has been examined and committed, as provided in Section 872, it shall be the duty of the district attorney of the county in which the offense is triable to file in the superior court of that county within 15 days after the commitment, an information against the defendant which may charge the defendant with either the offense or offenses named in the order of commitment or any offense or offenses shown by the evidence taken before the magistrate to have been committed. The information shall be in the name of the people of the State of California and subscribed by the district attorney."

that it is reasonably probable a more favorable determination would have resulted in the absence of counsel's failings." (*People v. Price* (1991) 1 Cal.4th 324, 440 [3 Cal.Rptr.2d 106, 821 P.2d 610]; see *People v. Anderson* (2001) 25 Cal.4th 543, 569 [106 Cal.Rptr.2d 575, 22 P.3d 347].) " ' " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " ' " (*People v. Anderson*, at p. 569; see also *Strickland v. Washington* (1984) 466 U.S. 668, 687–688 [80 L.Ed.2d 674, 104 S.Ct. 2052]; *People v. Pope* (1979) 23 Cal.3d 412, 426 [152 Cal.Rptr. 732, 590 P.2d 859].) However, " 'trial counsel's tactical decisions are accorded substantial deference [citations], [and] . . . [a] reviewing court will not second-guess trial counsel's reasonable tactical decisions.' " (*People v. Riel* (2000) 22 Cal.4th 1153, 1185 [96 Cal.Rptr.2d 1, 998 P.2d 969].)

■ Defendant's argument is premised on the general principle that "evidence of a defendant's poverty . . . is inadmissible to establish a motive to commit robbery or theft." (*People v. McDermott* (2002) 28 Cal.4th 946, 999 [123 Cal.Rptr.2d 654, 51 P.3d 874].) Defendant is correct that evidence of a defendant's poverty "without more" is inadmissible to establish motive "because it is unfair to make poverty alone a ground of suspicion . . . ." (*People v. Edelbacher* (1989) 47 Cal.3d 983, 1024 [254 Cal.Rptr. 586, 766 P.2d 1].) It is also inadmissible because the probative value of poverty alone is outweighed by the risk of prejudice. (*People v. Wilson* (1992) 3 Cal.4th 926, 939 [13 Cal.Rptr.2d 259, 838 P.2d 1212].) However, evidence of poverty is admissible in some circumstances, even in theft-related cases. Thus, for example, "the sudden possession of money, immediately after the commission of a larceny, by one who before that had been impecunious, is clearly admissible as a circumstance in the case." (*People v. Kelly* (1901) 132 Cal. 430, 431–432 [64 P. 563]; see also *People v. Cook* (2007) 40 Cal.4th 1334, 1356–1357 [58 Cal.Rptr.3d 340, 157 P.3d 950].) In *Edelbacher*, a murder case, our Supreme Court held that evidence of the defendant's indebtedness to the victim and others "had substantial relevance to show the motive for the murder of defendant's creditor, and this relevance clearly outweighed the risk of undue prejudice." (*People v. Edelbacher*, at p. 1024.)

*People v. Martin* (1971) 17 Cal.App.3d 661 [95 Cal.Rptr. 250] (*Martin*) is illustrative. In that case, the defendant admitted that he had gone to a certain location to pick up a marijuana package but denied that he had any intent to sell drugs. On appeal, the question was whether it "was error to permit the prosecution to cross-examine him over his objection on his employment prior to and at the time of the commission of the offense. In responding to the question, appellant testified to only intermittent employment and then volunteered that he played pool, dice and cards for money. This, appellant claims,

reflected unfavorably on his character which he had not put in issue . . . ." (*Id.* at p. 668.) The Court of Appeal observed: "[A]ppellant placed the motive for his conduct squarely in issue and for the determination of this issue, the jury had to rely primarily on circumstantial evidence. . . . [¶] Here, appellant's employment record was pertinent as it related to his financial need to engage in the illegal sale. It was for the jury to determine whether his pecuniary situation tended to directly connect him with the commission of the crime or to disclose the motive for its commission . . . ." (*Ibid.*)

The *Martin* court held that the prosecutor's cross-examination was proper. "The fact that the questions might disclose information derogatory to appellant's character would not affect its pertinency nor constitute a valid objection to its admission [citations]. We conclude that the questions here asked were within the range of proper cross-examination." (*Martin, supra,* 17 Cal.App.3d at p. 669.)

Here, Officer O'Neil testified that, at the time of defendant's arrest, defendant told him that he was unemployed. Defendant testified that he made no such statement but instead told the officer that he "was working at the present time." He testified at length about a tree-cutting job he had just finished but had not yet been paid for when he was arrested. In his testimony, through defense counsel's questioning, defendant portrayed himself as a "functional addict" who assiduously looked for work and had always supported himself doing construction work but who had fallen on hard times and had been forced to accept welfare for a time as a result of a work-related shoulder injury. Asked by his counsel if his drug habit was so bad that he would need to sell the methamphetamine he found in the jacket to support his habit, defendant testified: "No, I wouldn't. That's why I work."

■ Defense counsel was not ineffective for failing to object to Officer O'Neil's testimony. Defendant's statement that he lacked employment was relevant to show that he had a motive to sell drugs, and any objection, if made, would have been properly overruled. Defense counsel was not ineffective for asking defendant questions about his financial situation. Through counsel's questioning, defendant was able to present himself in a sympathetic light and advance his defense of lack of intent to sell. Finally, defense counsel was not ineffective for failing to object to the prosecutor's cross-examination of defendant about his income. Showing that defendant had no documentary proof to support his claimed income from work or welfare was also relevant to rebut defendant's asserted defense that he possessed the found drugs for his personal use and not for sale. In our view, "this relevance clearly outweighed the risk of undue prejudice." (*People v. Edelbacher, supra,*

47 Cal.3d at p. 1024.) No ineffective assistance of counsel has been shown here.

III. *Prosecutorial Misconduct*

Defendant contends that the prosecutor committed misconduct by arguing that defendant "still didn't take the jacket off when he was brought to preprocessing. He didn't take the jacket off when he was photographed at preprocessing. He took the jacket off when he had to book his property in. But instead of saying this jacket is not mine, he booked it into his property." Defendant objected that the argument was not supported by the evidence. The court advised the jury that they were the "final arbitrator or determiner of what the facts are based upon the evidence presented." The prosecutor then repeated that defendant "took the jacket off. And booked it into property."

Based on the testimony of Officers Barreto and O'Neil, which we have summarized in the statement of facts, it was a "fair inference drawn from the evidence" that defendant took off the jacket and it was "booked" into his jail property. (*People v. Avena* (1996) 13 Cal.4th 394, 421 [53 Cal.Rptr.2d 301, 916 P.2d 1000].) As such, the prosecutor's comment did not constitute misconduct. It was not an example of the prosecutor acting as an unsworn witness and attesting to facts outside of the record. (Cf., e.g., *People v. Johnson* (1981) 121 Cal.App.3d 94, 103 [175 Cal.Rptr. 8] [misconduct where prosecutor informed jury that a witness denied making an extortion demand, even though she did not testify on the subject, and that the prosecutor had "concluded from his personal investigation" that another witness's testimony was an outright lie].) The trial court's advice to the jury was neutral and correct. No error appears.

## CONCLUSION

The trial court did not lose jurisdiction by deeming the previously filed complaint the information. Defendant's attorney did not render ineffective assistance of counsel. The prosecutor did not commit misconduct, nor did the trial court err in its ruling on defendant's objection to the prosecutor's remarks.

## DISPOSITION

The judgment is affirmed.

Bamattre-Manoukian, Acting P. J., and Duffy, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 10, 2009, S172236.