Filed 1/12/16  P. v. McElroy CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C074036 |
| Plaintiff and Respondent, | (Super. Ct. No. CM037696) |
| v. | |
| CLARK LESLIE MCELROY III, | |
| Defendant and Appellant. | |

Jessica Legg and defendant Clark Leslie McElroy III had a contentious on-again, off-again relationship.  During an argument, defendant broke down the door of Legg's son's bedroom, injuring Legg.  Defendant was charged with dissuading a witness from reporting a crime.  (Pen. Code, § 136.1, subd. (b)(1).)  In a subsequent incident, an officer pulled over a car in which defendant was a passenger and discovered a pouch containing what proved to be nine grams of methamphetamine, a glass pipe, and baggies.  A further search unearthed a loaded semiautomatic pistol and methamphetamine residue. Defendant was charged with possession for sale of a controlled substance, transportation of a controlled substance, and possession of a firearm by a convicted felon.  (Health & Saf. Code, §§ 11378, 11379, subd. (a); Pen. Code, § 29800, subd. (a)(1) [all further

1

statutory references are to the Penal Code unless otherwise designated].) After the court granted his motion to sever the trial of count 1 from the remaining counts, separate juries in separate trials found defendant guilty of all charges and the trial court sentenced him to 15 years 8 months in state prison. Defendant appeals, contending insufficient evidence supports his conviction for dissuading a witness, improper exclusion of Legg's testimony, defendant's jail phone calls were improperly admitted, the court erred in excluding defendant from trial, insufficient evidence supports defendant's conviction for possession of a firearm, sentencing error, and ineffective assistance of counsel. We shall stay defendant's conviction for possession for sale of a controlled substance. In all other respects we shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Following the incident at Legg's home and the traffic stop, an information charged defendant with dissuading a witness (count 1), possession for sale of a controlled substance (count 2), transportation of a controlled substance (count 3), possession of a firearm by a convicted felon (count 4), and possession of hydrocodone (count 5). In addition, the information alleged that defendant had suffered a prior conviction of a serious felony. (§ 667, subd. (a)(1).) Defendant entered a plea of not guilty to all counts. The court severed count 1 from the remaining counts. The court granted the prosecution's motion to dismiss count 5 in the interest of justice. The following evidence was introduced at the two trials.

### Count 1

Legg and defendant had been in a relationship since 2010, and he moved in with Legg in the summer of 2012. The couple's relationship was off and on, and fraught with arguments.

A week or two after defendant moved out, on August 11, 2012, the couple took a trip together and returned to Legg's residence early the next morning. The couple began arguing and yelling. Legg asked defendant to leave, but he refused. Legg went into her

12-year-old son Marcus's room and shut the door. The door did not lock, so Legg sat on the floor bracing the door so defendant could not get in.

Defendant stood on the other side of the door and the couple continued to argue. Legg again asked him to leave and threatened to call the police. She pretended to make a phone call, stating her name and address and saying she wanted someone to leave but he would not.

Defendant then broke the door in half as Legg continued to brace it with her feet. The door's bottom hinge came out of the wall, hitting Legg. Defendant landed on Legg. Legg began crying and crawled next to Marcus in his bed. Defendant came into the room and said he was going to take Marcus's phone. Defendant told Legg, "I can't trust that you're not going to call the cops." Defendant took the cell phone and a device attached to the computer that allowed long distance calls through the computer.

Legg again asked defendant to leave, but he refused. Legg told Marcus to go and get help. Marcus approached some neighbors across the street, who called the police. Defendant left the house in Legg's car. Police later discovered Marcus's cell phone and the computer device in the garage.

Legg sustained an abrasion to her eye and a laceration to the side of her mouth. She told officers defendant caused her injuries.

The jury found defendant guilty on count 1, and the trial court subsequently found defendant had been convicted of a prior serious felony, for which he had served a prison term.

**Counts 2 Through 4**

On the morning of August 14, 2012, Officer John Alvies stopped a vehicle because the driver was not wearing a seat belt and the vehicle had no license plates. Two people were in the vehicle: Nicole Martin was the driver and defendant was the passenger.

3

As Alvies spoke to defendant, defendant reached toward a black duffle bag in the backseat. After Alvies told him not to reach in the back, defendant said he was just getting cigarettes. Defendant then retrieved cigarettes from the bag.

The officer found a small black-and-blue pouch between the front passenger seat and the center console of the car. Inside the pouch was a plastic bag containing a substance that later proved to be methamphetamine weighing about nine grams. The pouch also contained a glass pipe with white residue on the inside and burn marks on the bottom, as well as some smaller baggies. Defendant also had nine pills in his pocket.

Officer David Bryning, answering Officer Alvies's call for assistance, arrived at the scene of the traffic stop. At Officer Alvies's request, he searched the black bag in the backseat and inside it found a bag that was a small version of a motorcycle saddlebag, containing a loaded .25-caliber semiautomatic pistol. The larger bag also contained articles of clothing. Another pocket of the black bag yielded a digital scale and more baggies.

Defendant told Detective Scott Olsgard, also at the scene, that he had called his friend, Nicole Martin, to give him a ride. Defendant wanted to be dropped off to get his motorcycle.

At trial, Detective Olsgard also testified as an expert in the possession, sale, and transportation of controlled substances, including methamphetamine. Olsgard stated that methamphetamine is typically sold in .2-gram or .4-gram amounts. The methamphetamine found in the front seat weighed 9.04 grams, an amount consistent with possession for sale rather than personal use. Officers also found two pay-and-owe sheets, generally used in drug sales. In Olsgard's opinion, nine grams of methamphetamine, pay-and-owe sheets, baggies, a digital scale, and a loaded handgun pointed to possession of methamphetamine for sale.

The jury heard phone calls between defendant and Nicole Martin made while defendant was in jail. Defendant talked to Martin about her taking responsibility and

stated they were "equally" at fault. Defendant said: "We were both doin' it together. And, yes, you did . . . sell some of what I had in that car. And you did have possession of it with me the night before." In another call, defendant asked Martin to "tell them that you brought the stuff. You brought the car. That's all. Just create the doubt. Not admit to anything. . . . So what you do is you create the doubt, right?"

Defendant testified in his own behalf. He admitted having been previously twice convicted of felony dissuading a witness. Defendant had a drug problem caused by a previous traffic accident and used methamphetamine regularly prior to his arrest. Nicole Martin, defendant stated, picked him up with the black bag already in the back seat. She wanted to trade the gun for drugs. Defendant did not know there were drugs in the car.

The jury found defendant guilty on all counts. In bifurcated proceedings the court found the prior conviction allegation true.

**Sentencing**

The court sentenced defendant to 15 years eight months in prison: eight years (the upper term, doubled) on count 3, consecutive one year four month terms (one-third the middle term) on counts 1 and 4, and a consecutive five-year enhancement for the prior serious felony. The court imposed a concurrent six-year term (upper term, doubled) on count 2. Defendant filed a timely notice of appeal.

## DISCUSSION

### SUFFICIENCY OF THE EVIDENCE OF DISSUASION OF A WITNESS

Defendant contends insufficient evidence exists to convict him of a violation of section 136.1, subdivision (b)(1), felony dissuading of a witness. Central to defendant's argument is his claim that, "Here, no crime was committed in that there was no evidence that [defendant] had any knowledge that the door would break, nor that he should have reasonably anticipated that his conduct would cause the door to break in half. His conduct was negligent or even reckless, but it was not a crime."

5

In reviewing a defendant's challenge to the sufficiency of the evidence, we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence. Substantial evidence is evidence that is credible, reasonable, and of solid value such that a reasonable jury could find the defendant guilty beyond a reasonable doubt. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11 (*Rodriguez*).)

We do not reassess the credibility of witnesses, and we draw all inferences from the evidence that supports the jury's verdict. (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1382.) Unless it is physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

Section 136.1, subdivision (b) provides, in part: "Except as provided in subdivision (c), every person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense . . . : [¶] (1) Making any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge."

The court instructed the jury on dissuading a witness: "The defendant is charged with dissuading a witness. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant maliciously tried to prevent or discourage Jessica Legg from making a report that she was a victim of a crime to police; [¶] 2. Jessica Legg was a witness or crime victim; [¶] and [¶] 3. The defendant knew he was trying to prevent or discourage Jessica Legg from reporting victimization and intended to do so. [¶] A person acts *maliciously* when he or she unlawfully intends to annoy, harm, or injure someone else in any way, or intends to interfere in any way with the orderly administration of justice. [¶] . . . [¶] A person is a *victim* if there is reason to believe that a federal or state crime is being or has been committed or attempted against him or her. [¶] It is not a defense that the defendant was not successful in preventing or

6

discouraging the witness or victim.  It is not a defense that no one was actually physically injured or otherwise intimidated."

To find defendant guilty of dissuading a witness the jury had to find he dissuaded a crime victim.  Section 136, subdivision (3) defines a victim as "any natural person with respect to whom there is reason to believe that any crime as defined under the laws of this state . . . has been perpetrated . . . ."  The prosecution offered the jury three possible crimes that defendant was trying to dissuade Legg from reporting:  vandalism, assault, and battery.  (RT 378, 389, 383)

The jury had before it substantial evidence to establish that defendant committed a crime against Legg.  Defendant, despite frequent pleas from Legg, refused to leave her residence.  In response, Legg barricaded herself in her son's room.  She threatened to call the police as the argument continued with defendant on the other side of the door.  After Legg pretended to call police, defendant broke down the bedroom door as Legg held it closed with her feet.  The door broke, injuring Legg.  Defendant told Legg he couldn't trust her not to call the police and took the cell phone and the device that allowed calls through the computer.  Defendant again refused Legg's request that he leave and Legg sent her son for help.

The jury had before it sufficient evidence to find defendant dissuaded Legg from reporting either an assault or a battery.  An assault "is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."  (§ 240.)  Battery is "any willful and unlawful use of force or violence upon the person of another."  (§ 242.)  Defendant broke down a door he knew Legg was behind.  In the process, defendant injured Legg, thereby committing assault and battery.  He thereafter attempted to prevent her from calling the police by removing her son's cell phone and a device connected to a computer.

In addition, the offense of vandalism involves the malicious defacing of, damage to, or destruction of the real or personal property of another.  (§ 594, subd. (a).)  Here,

7

defendant damaged Legg's bedroom door.  The jury could reasonably conclude he did so maliciously and intentionally in an effort to get to Legg.  Again, defendant prevented Legg from reporting the vandalism by removing the cell phone and disabling the computer.  Finally, defendant's refusal to leave Legg's home upon her demand rendered him guilty of trespass.  Defendant responded to the request by breaking down the door in an effort to forestall Legg's ability to report the crime.  The jury had before it sufficient evidence that defendant committed any one or all of these three crimes:  assault, vandalism, and trespass.

We reject defendant's contention that he lacked the requisite mental state and thus no crime was committed since "it is not within the common experience or knowledge of the average person that a door would break literally in two with the top half remaining on the door frame by pushing on it.  Would any person have reasonably anticipated the door would, almost immediately [citation], split in two?"  The question misses the point.  No matter the average person's knowledge of door construction, the jury could reasonably conclude that defendant's application of great force against a door being held shut by the victim would result in physical injury to her.  Sufficient evidence supports the jury's conclusion that defendant committed a crime.

## EXCLUSION OF LEGG'S TESTIMONY

At trial, defense counsel sought to elicit from Legg testimony as to whether she wanted to call the police, whether she believed she was a crime victim, and whether she believed defendant broke down the door on purpose.  The prosecution objected on the grounds of relevance, and the court sustained the objections and excluded Legg's proposed testimony.  This, defendant claims, amounts to reversible error.

### Background

After the court found Legg's proposed testimony inadmissible, defense counsel stated his objections to the court's ruling.  Defense counsel argued Legg was the only eyewitness to what happened on the night of the incident.  If Legg did not believe she

8

was the victim of a crime, defense counsel asserted, then defendant could not be guilty of dissuading a witness.

The prosecution argued section 136.1 focuses on defendant's intent to prevent or discourage the victim from reporting a crime. The jury instruction on section 136.1 does not require that the victim actually call the police. Therefore, Legg's opinion as to whether or not a crime was being committed was irrelevant.

The court found "the victim's opinion as to whether she was a victim of a crime or whether the defendant purposely intended to break the door is not relevant. And the objection will be sustained."

**Discussion**

Defendant contends the court erred in excluding the evidence. According to defendant: "If the breaking of the door was an accident, then no crime was committed. If Ms. Legg did not believe herself to be the victim of a crime, then [defendant] could not have prevented a crime victim from reporting her victimization." The evidence, defendant argues, was admissible under Evidence Code section 351 and as opinion evidence.

Section 136.1, subdivision (d) states: "Every person attempting the commission of any act described in subdivisions (a), (b), and (c) is guilty of the offense attempted without regard to success or failure of the attempt. The fact that no person was injured physically, or in fact intimidated, shall be no defense against any prosecution under this section." Section 136.1 requires only that the defendant attempt to dissuade a witness to a crime; successful intimidation is not required.

Defendant argues Legg's testimony was relevant to show whether or not defendant broke the door on purpose. But whether or not defendant broke the door "on purpose" is not relevant to the issue of whether defendant attempted to dissuade Legg from contacting the police.

9

Section 136.1 does not require proof that the victim was actually going to contact the police. Therefore, Legg's testimony as to whether she intended to call the police is not relevant. Nor is Legg's subjective belief as to whether or not she was a victim relevant. Under section 136 the jury must find there is "reason to believe" an individual is the victim of a crime, an objective determination. Finally, Legg's testimony regarding whether defendant intended to break down the door has no relevance. While a lay witness may testify to objective behavior and describe such behavior as consistent with a state of mind, the witness may not give an opinion as to another's state of mind. (*People v. DeHoyos* (2013) 57 Cal.4th 79, 130-131.) The trial court did not err in excluding irrelevant evidence. (Evid. Code, § 350 [only relevant evidence admissible].)

## ADMISSIBILITY OF EVIDENCE–
## BELATED DISCLOSURE OF JAILHOUSE RECORDINGS

On March 13, 2013, the second day of trial on counts 2 through 4, defense counsel learned that the prosecution intended to introduce portions of recorded jailhouse calls made by defendant. Defense counsel objected and the trial court overruled the objection. Defendant argues the trial court erred in failing to exclude the two conversations due to their late discovery.

**Background**

After trial on count 1, the prosecution's investigator listened to jail tapes in preparation for trial on counts 2 through 4. The investigator discovered information pertaining to the drug charges and the prosecution provided the tapes to the defense on March 8, 2013. During a hearing that same day, defense counsel noted the need for written transcripts of any recordings played during trial but did not raise the issue of delayed discovery.

At a March 13, 2013, hearing, defense counsel stated he had not been able to listen to all the telephone conversations and had not yet heard the specific recordings the prosecution intended to play for the jury. Defense counsel stated: "I feel completely

10

unprepared to go forward" and requested that the recordings be excluded or the court declare a mistrial.

The prosecution noted the recordings had been disclosed on March 7, 2013, to the original counsel of record. In addition, the prosecution pointed out that since the recordings were of defendant, he was aware of their contents.

The trial court stated the prosecution was going to make the specific recordings and transcripts available to defense counsel for review at lunch. Defense counsel did not review the recordings during the lunch break. That afternoon, at the conclusion of testimony, the court made the courtroom available for defendant and defense counsel to listen to the portions of the phone calls the prosecution intended to present to the jury. Instead, the prosecution made a copy for the defense and provided it that evening.

The following day, the prosecution played the phone calls for the trial court and provided transcripts. Defense counsel objected to the admission of the phone calls and argued they constituted a violation of discovery. The trial court noted the calls were not brought up during the first trial. The prosecution explained that their investigator was listening for information related to the section 136.1 charge. The investigator then switched focus to the charges relevant to the traffic stop. When the calls were discovered they were immediately made available to defense counsel. The prosecution stated that the specific phone calls were provided to defense counsel the night before and stated: "If he needs more time to listen to them, the People are willing to permit as much reasonable time as he needs."

After listening to the two-minute recordings and reading the transcripts, the trial court allowed the phone calls, ruling the probative value outweighed any prejudice. There was no basis upon which to exclude them under section 1054 et seq.

**Discussion**

Section 1054.1 requires that the prosecution disclose to the defense certain categories of evidence, including all statements of the defendant and all real evidence

11

obtained as part of the investigation of the offenses.  Absent good cause, this evidence must be disclosed at least 30 days prior to trial or immediately if discovered or obtained within 30 days of trial.  (§ 1054.7.)

According to defendant, "[t]he tapes should have been initially provided by January 25, 2013, thirty days prior to the first trial, with continuing discovery as calls were recorded.  At the very latest the tapes relevant to the second trial were required to have been provided no later than February 9, 2013, thirty days prior to the second trial.  The investigator for the prosecutor's office had been reviewing the tapes for information relevant to the first case and then switched over to the current set of charges."  Defendant labels the prosecution's conduct "sandbagging and gamesmanship."

Section 1054.7 provides, in part:  "If the material and information becomes known to, or comes into the possession of, a party within 30 days of trial, disclosure shall be made immediately . . . ."  Here, the prosecution provided defense counsel with recordings of the calls once the prosecution's investigator discovered they were relevant to the case.  However, defendant argues the recordings should have been made available immediately, not just when their relevance was discovered.

Regardless, we cannot find the court abused its discretion in denying defendant's request to exclude the evidence or declare a mistrial.  Even if the late discovery of the phone calls ran afoul of section 1054.7, exclusion of evidence is permitted "only if all other sanctions have been exhausted."  (§ 1054.5, subd. (c).)  Under section 1054.5, other sanctions for a violation include immediate disclosure, delaying the testimony of a witness, a continuance, or any other lawful order.  Here, the trial court and the prosecution both offered defense counsel additional time to review the recordings and transcripts.  Defense counsel declined those efforts.  The trial court possesses broad discretion to fashion a remedy in the event of discovery abuse to ensure that the defendant receives a fair trial.  (*People v. Jenkins* (2000) 22 Cal.4th 900, 951.)  We find no abuse of discretion.

12

## REMOVAL OF DEFENDANT FROM THE COURTROOM

Defendant contends the court erred in removing him from the courtroom on the third day of trial. He contends his conduct was not so disorderly or disruptive that the trial could not be conducted in his presence.

**Background**

During motions in limine in the second trial on counts 2 through 4, the trial court requested defendant be silent during the rulings. Defendant responded, "I'm not chatting. I'm talking about my life. You get to go home. I don't." The court asked, "Do you recall what I said to you last time? If you can't control yourself, I'm going to find that you're voluntarily absenting yourself from the Court and we'll proceed without you." Defendant replied, "I'm sure it's probably going to end up that way."

Subsequently, another exchange took place:

"Defendant . . . : That's my name. I mean, they're trying to say I lied.

"The Court: Okay. That's what your attorney is telling me. He's arguing for you, okay? And I'm not really --

"Defendant . . . : Finally.

"The Court: -- disagreeing with him now.

"Defendant . . . : Finally somebody's going to believe me.

"The Court: Do you wish to be heard on that?

"[Prosecutor]: Your Honor, the People find that relevant because it relates to defendant's belief that he had a warrant out for his arrest at that time.

"Defendant . . . : No. I told them --

"The Court: Okay. Sir, she's just doing her job.

"Defendant . . . : They're lying. It's lying. I don't want to hear lies. Maybe this is the part where you should take me out so I don't have to hear her lies.

"The Court: Would that make you happier to not, so we can --

"Defendant . . . : Fuck, man. I can't believe this.

13

"The Court:  Your choice, sir.  Would you like to leave now?

"The Court is going to defer ruling on that issue. . . ."  Defendant remained in the courtroom.

At the conclusion of pretrial motions, the court stated:  "Sir, you cannot -- I spent several days with you in trial.  And I told you that I appreciated how respectful you were to the Court in front of the jury.  So I hope that you can do that when we have the jury present.  That's the best thing for you. . . ."  Defendant asked, "Did it work last time?"  The court replied, "Well, that's up to you, sir."

During an evidence hearing concerning text messages from a phone found in the car at the time of defendant's arrest, the court cautioned defendant to stop interrupting:

"The Court:  Sir, you need to stop.

"Defendant . . . :  She won't take no for an answer.

"The Court:  She's doing --

"Defendant . . . :  This is my life.  I didn't make those texts.  I didn't make them.  No matter what you say or you try to manipulate, I didn't make them.

"The Court:  We're going to take a recess.

"Defendant . . . :  I made the one about Jess, you liar.

"The Court:  He's not going to be able to come back in the courtroom attacking the DA like that.  We're going to take a ten-minute recess."

After a break the court stated:  "We are back on the record. . . .

"Mr. McElroy, I'm not going to admonish you one more time.  But I'm [*sic*] directing negative comments to the prosecuting attorney is unacceptable to this Court.  And if you cannot control your behavior in this courtroom, I will make a finding that you have voluntarily absented yourself and we will proceed with this jury trial without your presence.

"Do you understand that, sir?

"Defendant . . . :  Of course."

Later, when Detective Olsgard testified, the Court stated: "Okay. [Defense counsel], we're going to take a break at noon. But there's no reason to be disrespectful to this officer." Defendant stated, "He's a dirtbag." The court called a lunch break, dismissed the jury, then continued, "Mr. McElroy, this is the very last time I'm going to admonish you to behave appropriately in court. [¶] . . . [¶]

"... Calling a witness a dirtbag is disrespectful --"

"Defendant . . . : He's a lying son of a bitch.

"The Court: -- to this Court. Okay.

"You're removed. We will come back after lunch. If you haven't changed your demeanor --

"Defendant . . . : I'm telling you to quit lying.

"The Court: -- you will be removed from this courtroom and I will find that you have voluntarily absented yourself and we will proceed until we finish this trial without your presence.

"So I'll give you over the lunch hour to change your demeanor. If you do not, you will not continue to be present in this court.

"Is that clear to counsel?"

Defense counsel answered, "Yes, Your Honor." At this point defendant was not present.

Following the lunch break, the court permitted defendant to return. "[The Court]: I just wanted to inquire of you, [defense counsel], has there been a change in demeanor of your client over the lunch hour?

"[Defense Counsel]: I just spoke with him. He's okay.

"The Court: Okay. So we're going to bring Mr. McElroy in. [¶] . . . [¶] . . . Mr. McElroy is now present in the courtroom.

"[Prosecutor], you said before we took our break you wanted to put something on the record?

15

"[Prosecutor]: Yes, Your Honor.

"This morning Detective Olsgard, my investigating officer, informed me the defendant has made several comments towards him, derogatory in nature, swearing at times.

"I don't know if it's been -- I haven't heard it. I think it's quiet enough that the jury and perhaps the Court isn't hearing it.

"But Detective Olsgard said that he's able to hear it and that that is going on during the trial.

"The Court: Okay. And Mr. McElroy, your attorney has informed me that you're ready to proceed and you're going to control your demeanor in the courtroom and not be disruptful; is that correct?

"Defendant . . . : Absolutely.

"The Court: Okay. Thank you.

"Court is referring to Penal Code Section 1043(b), which indicates that:

" 'The absence of a defendant in a felony case, after trial has commenced in his presence, shall not prevent continuing the trial to and including the return of the verdict in any of the following cases:

" 'Subparagraph (1), in any case in which the defendant, after he has been warned by the Judge that he will be removed if he continues his disruptive behavior, nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the Court that the trial cannot be carried on with him in the courtroom.'

"And People versus Medina, 11 Cal.4th 694, 1995 case, which indicates pursuant to Penal Code Section 1045, the trial court need not continually give renewed warnings or advise at each renewed outburst of disruptive behavior.

"I'm telling you, if I hear anything disrespectful, derogatory, or inappropriate, you will be removed from the courtroom and we'll proceed without you.

"Do you understand that, sir?

16

"Defendant . . . : Yes, ma'am.

"The Court: Thank you."

Trial continued. Near the end of the prosecution's case-in-chief, the following exchange occurred:

"Defendant . . . : What a corrupt system, man.

"The Court: Okay. We're going to have him step out for a second.

"Defendant . . . : So I can't hear my audio at all?

"The Court: Not if you keep running your mouth, sir.

"We're taking a recess.

"Defendant . . . : So you watch me get screwed? You're going to do that on your conscience? You can do that, huh? Faggot. [¶] . . . [¶]

"The Court: Okay. The Court has excluded Mr. McElroy from the courtroom.

"As I informed him yesterday, I intended to remove him if he was unable to conduct himself without being disruptive in the courtroom. He was certainly disruptive this morning.

"So pursuant to Penal Code Section 1043(b)(1), the Court is going to remove him from the remainder of the trial."

Defendant returned to the courtroom to testify in his own behalf and remained in the courtroom after his testimony. Following jury instructions, the court informed defendant: ". . . I'll allow you to be present while the verdict is read due to your demeanor this afternoon."

**Discussion**

A criminal defendant has the constitutional right to be present during trial. (*People v. Waidla* (2000) 22 Cal.4th 690, 741.) However, the trial court may exclude a defendant under section 1043, subdivision (b): "The absence of the defendant in a felony case after the trial has commenced in his presence shall not prevent continuing the trial to, and including, the return of the verdict in any of the following cases:

17

"(1) Any case in which the defendant, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that the trial cannot be carried on with him in the courtroom." We give considerable deference to the trial court's judgment as to whether a disruption has occurred or may be reasonably anticipated. (*People v. Welch* (1999) 20 Cal.4th 701, 773.)

Defendant argues his behavior does not approach the abusive behavior found culpable in *Illinois v. Allen* (1970) 397 U.S. 337 [25 L.Ed.2d 353], and therefore the court erred in removing him from the courtroom. *Allen* does not set forth the standard by which we review the trial court's decision to remove a defendant. Instead, we harken to the language of the statute, which allows the trial court to remove a defendant who insists on conducting himself "in a manner so disorderly, disruptive, and disrespectful of the court that the trial cannot be carried on with him in the courtroom." (§ 1043, subd. (b)(1).) Our review of the record, including the pertinent incidents recited above, supports the trial court's decision and we find no error.

## SUFFICIENCY OF THE EVIDENCE OF POSSESSION OF A FIREARM

Defendant acknowledges that he is a convicted felon under section 29800. However, he argues the evidence is insufficient to "give rise to anything more than mere speculation that he had any knowledge that a gun was hidden in the black duffle bag in the back seat of the vehicle in which he was a passenger." Under defendant's analysis, the evidence at most demonstrates that he was in the same vehicle as the gun.

A conviction under section 29800 requires conviction of a felony and ownership, possession, custody, or control of a firearm, plus knowledge. The prosecution must prove defendant's knowledge of the existence of the weapon and knowledge of dominion or control over it. (*People v. Kim* (2011) 193 Cal.App.4th 836, 846; *In re Jorge M.* (2000) 23 Cal.4th 866, 885.)

18

When Officer Alvies pulled over the car, defendant promptly reached into the duffle bag containing the gun and retrieved cigarettes. The gun was in a small version of a motorcycle saddlebag within the duffle bag, and defendant was on his way to retrieve his motorcycle when the car was pulled over.

Defendant cites his statements made in recorded jailhouse calls as undercutting this evidence. During these conversations, defendant stated he did not know there was a loaded gun in the car and that the bag did not belong to him. However, the jury could disregard defendant's attempts to disassociate himself from the weapon he was charged with possessing. We find that a reasonable jury could find defendant guilty beyond a reasonable doubt of being a felon in possession of a firearm.

## SENTENCING ERROR

### Section 654

Defendant contends section 654 precludes punishment for transportation of methamphetamine, count 3; possession of methamphetamine for sale, count 2; and possession of a firearm by a convicted felon, count 4. The People agree that section 654 precludes punishment for possession of methamphetamine but reject the argument as to possession of a firearm by a convicted felon.

Section 654, subdivision (a) provides, in part, that an "act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." The court cannot impose such multiple punishments for offenses arising out of a course of conduct that violates more than one statute but constitutes an indivisible transaction. (*People v. Britt* (2004) 32 Cal.4th 944, 951-952.)

The question of whether criminal acts constitute an indivisible course of conduct is primarily a question of fact to be determined by the trial court. We uphold the trial

19

court's determination if it is supported by substantial evidence. (*People v. Herrera* (1999) 70 Cal.App.4th 1456, 1466; *People v. Saffle* (1992) 4 Cal.App.4th 434, 438.)

The People agree the court's sentence on count 2 ran afoul of section 654 and should be corrected. Defendant's convictions for possession of methamphetamine for sale and transportation of that methamphetamine were based on the same act of carrying the drugs in the car. Accordingly, we shall order defendant's sentence on count 2 to be stayed pursuant to section 654.

Defendant also argues his sentence for possession of a firearm should be stayed, since the evidence showed possession of the firearm was "only in conjunction with the primary offense" of transportation of methamphetamine. Defendant contends that there was no evidence he had physical possession of the firearm, and the jailhouse phone calls tended to show the duffle bag did not belong to him and he did not know the gun was in the bag. Therefore, "possession of the firearm was part of the same course of conduct."

However, we consider whether substantial evidence supports the court's determination that defendant's possession of the firearm was for a separate intent and objective than possession and transportation of the methamphetamine. Officers found the gun in a separate motorcycle bag within the duffle bag. Defendant told officers he was on his way to get his motorcycle when the officer pulled him over. The duffel bag also contained articles of clothing unrelated to drug sales. The trial court, based on these facts, could find that defendant possessed the firearm for purposes separate from the sale of methamphetamine. Substantial evidence supports the trial court's finding that defendant entertained "multiple criminal objectives which were independent of and not merely incidental to each other." (*People v. Beamon* (1973) 8 Cal.3d 625, 639.)

**Consecutive Term for Possession of a Firearm**

Defendant argues the trial court erred in imposing the sentence for possession of a firearm consecutively to his sentence for transportation of methamphetamine. As noted, our analysis of the evidence supports the trial court's finding that the crimes and their

objectives were predominantly independent of each other. (Cal. Rules of Court, rule 4.425(a)(1).) Therefore, the court did not abuse its discretion in imposing a consecutive term for possession of a firearm by a convicted felon.

**Upper Term**

According to defendant, the court erred in imposing the upper term. Defendant faults the trial court's stated reasons for imposing the term.

Defendant contends the trial court erred in imposing the upper term on all counts over his objection. While the trial court erred in imposing the upper term on counts 1 and 4, staying all but one year four months for each count, the proper sentence on those counts was to impose an (unstayed) sentence of one-third the middle term. (§ 1170.1, subd. (a).) Accordingly, we focus on the upper term on counts 2 and 3, the drug offenses. Defendant challenges the court's stated reasons.

The trial court gave a number of reasons for selecting the upper term. These reasons included the violence and threat of violence, that defendant was armed, that the victims were vulnerable, that defendant dissuaded witnesses, that defendant received a concurrent sentence which could have been consecutive, that he failed to address his substance abuse, that his conduct posed a serious danger to society, that he had served a prior prison term, and that he had performed poorly on parole.

Considered in light of this standard, both defendant's prior prison term, for which he did not receive an enhancement, and his poor performance on parole are valid factors in aggravation. (Cal. Rules of Court, rule 4.421(b)(3) & (b)(5).) Defendant disagrees with the trial court's gloss on his performance on parole and asserts this factor was "fully mitigated by his conduct after being released from prison." Such disagreement does not establish an abuse of discretion on the part of the trial court, and we find none.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant challenges the effectiveness of counsel's representation in three respects: failure to request an instruction on negligence, failure to seek a continuance,

and representation during sentencing.  To establish ineffective assistance of counsel, a defendant must show counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms, and that the deficient performance prejudiced the defendant.  (*People v. Ledesma* (1987) 43 Cal.3d 171, 216-217.)  We accord trial counsel's tactical decisions substantial deference and do not second-guess counsel's reasonable tactical decisions.  (*People v. Maldonado* (2009) 172 Cal.App.4th 89, 97.)

Defendant argues that counsel's theory of the case was that the breaking of Legg's door was an accident.  Therefore, defense counsel should have requested CALCRIM No. 3404, which instructs on accident.  However, defendant was charged with dissuading a witness, necessitating a finding that there was a "reason to believe that any crime as defined under the laws of this state or any other state or of the United States is being or has been perpetrated or attempted to be perpetrated."  (§ 136, subd. (3).)  The jury was not required to find defendant committed any specific crime with a specific mental state, making an instruction on accident unnecessary.

In addition, defendant contends counsel performed ineffectively in failing to seek a continuance in response to the prosecution's late disclosure of defendant's recorded jailhouse conversations.  Defendant notes that when defense counsel learned on the second day of trial that the prosecution would be introducing jailhouse telephone calls, counsel stated he felt "completely unprepared to go forward."  Defense counsel requested the evidence not be admitted or that the court grant a mistrial.  However, defendant contends defense counsel should have requested a continuance.

Unfortunately, defendant fails to demonstrate a reasonable probability of a different result had a continuance been granted.  Defendant does not present any argument concerning what defense counsel would have done differently given a continuance.

Finally, defendant contends counsel failed to argue that section 654 applied to the possession for sale and felon in possession of a firearm convictions. We have, however, corrected the error and order the sentence on count 2 stayed. Defendant has suffered no prejudice.

## DISPOSITION

The judgment is modified to strike references to the upper term on counts 1 and 4, and to strike any reference to partially staying any term imposed on those two counts. The sentence on count 2 is stayed. The trial court is directed to prepare an amended abstract of judgment reflecting that count 2 is stayed pursuant to section 654 and reflecting midterm sentences running consecutively as to counts 1 and 4, and to forward a certified copy thereof to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

                                                          RAYE                    , P. J.


We concur:



            HULL                    , J.



            DUARTE                 , J.

23